IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** : | |
| : | |
| **v.** : | |
| : | **Case No. SAG-23-394** |
| **WAYNE LEE,** : | |
| : | |
| **Defendant.** : | |

## MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE OBTAINED FOLLOWING ILLEGAL, WARRANTLESS SEIZURE

Wayne Lee, by and through undersigned counsel, hereby moves this Honorable Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, to suppress all tangible and derivative evidence obtained following his unlawful seizure on July 10, 2023. The Fourth Amendment's protections against unreasonable seizures and searches were violated by Baltimore Police Department officers during their warrantless seizure, search, and arrest of Mr. Lee in the unit block of North Howard Street. Under the fruit of the poisonous tree doctrine established in *Wong Sun v. United States*, 371 U.S. 471 (1963), all tangible and derivative evidence obtained following Mr. Lee's unlawful seizure should be suppressed.

## STATEMENT OF FACTS

The following facts are derived from Mr. Lee's arrest report and video footage, including surveillance and body worn camera footage:

On July 10, 2023, at approximately 9:05 PM, by utilizing a CitiWatch camera, Baltimore City Police Detectives (BPD) observed Mr. Lee and a companion walking northbound along the unit block of North Howard Street in Baltimore. Per the video footage, Mr. Lee and his companion appear to be in friendly, casual conversation with one another. Mr. Lee is carrying a black plastic bag of the sort used by carry-outs and convenience stores. His friend appears to be

1

holding a portable speaker and a bottle of water. They cross Fayette Street, continue up the block, and walk into a brightly lit corner store. The corner store and surrounding area are quite busy: while Mr. Lee and his friend are inside the store, multiple people converge around the store's entrance and others come and go.



Mr. Lee and his friend are inside the store for approximately two minutes. Mr. Lee exits the store carrying a bag of chips in his left hand, and then he and his friend briefly talk with another man wearing black compression pants who had been standing outside of the store with a phone in his hand. Following the brief conversation, the man in the black compression pants is also carrying a bag of chips.

Mr. Lee and his friend next talk with a man wearing a gray zip-up hoodie, who had also gone into the corner store. Per the arrest report, the police justified their subsequent seizure and search of Mr. Lee using this conversation. While talking with the man in the gray hoodie, the CCTV camera captures the backs of Mr. Lee and his friend. As Mr. Lee turns around, he has a

bag of chips in one hand and is pulling a chip from the bag using the other. Mr. Lee and his friend then walk southbound on Howard Street—appearing, as they had at the outset of the video footage, to be in an easygoing conversation with one another.

Approximately eight minutes later, while Mr. Lee and his friend remained on Howard Street, at least six BPD officers arrived on the scene in an unmarked squad car and an unmarked SUV. Officers immediately exited their vehicles upon pulling up to Mr. Lee and his friend. As they did so, both Mr. Lee and his friend put their hands in the air and remained standing in place. Officer Amador and Detective Jackson ran towards Mr. Lee. Detective Jackson grabbed Mr. Lee by both wrists and then held Mr. Lee's hands behind his back. While Mr. Lee's hands were held behind his back, Officer Amador recovered six orange-top vials containing suspected crack-cocaine from Mr. Lee's right hand. After handing the vials to Detective Butt, Officer Amador handcuffed Mr. Lee. At this point, at least four officers were surrounding Mr. Lee—all armed and wearing police vests. Further search of Mr. Lee's person allegedly led to the recovery of a pistol, ammunition, nine more orange-top vials containing suspected crack-cocaine, one bag containing suspected crack-cocaine, and a total of $937.

## **ARGUMENT**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Warrantless seizures and searches are presumed to be unreasonable. *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 357 (1967). Tangible and derivative evidence obtained because of a warrantless seizure or search must be suppressed unless the government demonstrates by a preponderance of the evidence that the warrantless intrusion was lawful. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *see also United*

*States v. Jeffers*, 342 U.S. 48, 51 (1951) (government's burden to justify a warrantless seizure or search); *United States v. Dupree*, No. RDB-13-256, 2013 WL 4499037 at *3 (D. Md. Aug. 20, 2013) ("In the context of a motion to suppress evidence seized during a warrantless search, the government bears the burden to prove by a preponderance of the evidence that the search and seizure did not violate the Fourth Amendment.")).

"A police-citizen encounter rises to the level of a Fourth Amendment seizure when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." S*antos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 460 (4th Cir. 2013). "This inquiry is objective, asking whether in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* Whether a given seizure amounts to a full-scale arrest or investigatory stop depends upon the "totality of the circumstances," and whether the person's "freedom of action [was] curtailed to a degree associated with formal arrest." *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001).

Probable cause is required to justify a warrantless arrest. *See*, *e.g.*, *Maryland v. Pringle,* 540 U.S. 366, 370 (2003); *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause requires "facts and circumstances within the officer's knowledge [that] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984). Probable cause must be particularized —the Supreme Court has long held that a person's mere proximity to others suspected of criminal activity does not, without more, justify a warrantless arrest. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Probable cause is also "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although probable cause requires less than the

standard of evidence needed to convict, it requires more than "bare suspicion." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998).

To justify a brief investigatory stop, police must have reasonable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1 (1968). Much like probable cause, reasonable suspicion must be objective, particularized, and based on specific, articulable facts. *See id.* at 21; *see also United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018). "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches[.]" *Terry*, 392 U.S. at 21. "In evaluating the validity of a Terry stop, [courts] must consider the totality of the circumstances—the whole picture." *United States v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020). To do so, courts must look to "the facts within the knowledge of the officer," *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011), "at the time of the seizure," *United States v. Kehoe*, 893 F.3d at 237.

Here, the government cannot satisfy its burden that the warrantless seizure and search of Mr. Lee on July 10, 2023, were lawful. Mr. Lee was seized from the moment that numerous armed BPD officers pulled alongside him in two police vehicles, Detective Jackson and Officer Amador simultaneously ran towards him, and Detective Jackson immediately grabbed both of his wrists. While courts have adopted an objective standard, the fact that Mr. Lee did not feel "free to leave" the encounter is readily apparent from his instinct to put his hands in the air as the police approached him. Based upon the totality of the circumstances, this warrantless seizure amounted to a full-scale arrest requiring probable cause. But, even if the Court disagrees, BPD officers' warrantless seizure of Mr. Lee was nonetheless illegal because the police lacked reasonable suspicion to detain him, even briefly. Contrary to the conclusion reached in the arrest report, video footage merely shows Mr. Lee and his friend in conversation with an unidentified

person outside of a busy corner store, where other people are similarly converging and conversing. It does not show Mr. Lee engage in a drug deal. Such innocuous behavior failed to establish reasonable suspicion to seize Mr. Lee. Accordingly, this Court should suppress any and all tangible and derivative evidence, including statements, stemming from the illegal seizure and search.

## CONCLUSION

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, Mr. Lee hereby requests a hearing on this Motion and reserves the right to raise further arguments and issues that become apparent through subsequent filings and at the hearing.

For the reasons stated herein and any that become evident in the future, Mr. Lee urges the Court to suppress all tangible and derivative evidence, including statements, obtained as a result of the constitutional violations that occurred on July 10, 2023.

Respectfully submitted,

JAMES WYDA
Federal Public Defender for the
    District of Maryland

      /s/
Marquise Findley-Smith
Courtney D. Francik
Assistant Federal Public Defenders
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962 3962
Courtney_Francik@fd.org
Marquise_Findley-Smith@fd.org